*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-0759

ALICIA ECKENRODE, PETITIONER,

V.

DISTRICT OF COLUMBIA POLICE AND FIREFIGHTERS RETIREMENT AND RELIEF BOARD, RESPONDENT.

Petition for Review from the District of Columbia Police and Firefighters Retirement and Relief Board (PD20-1111)

(Argued March 9, 2023                                    Decided July 16, 2026)

*Paul A. Fenn* for petitioner.

*Alexandra Lichtenstein*, Assistant Attorney General, for respondent. *Karl A. Racine*, Attorney General for the District of Columbia at the time, *Loren L. AliKhan*, Solicitor General at the time, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Graham E. Phillips*, Deputy Solicitor General, *Megan D. Browder*, Assistant Attorney General at the time, and *Marcella Coburn*, Assistant Attorney General, were on the briefs for respondent.

Before EASTERLY and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge.*

Opinion for the court PER CURIAM.

Dissenting opinion by *Senior Judge* RUIZ at page 26.

PER CURIAM: Petitioner Alicia Eckenrode seeks review of the denial of her request for enhanced survivor benefits after the death of her husband, who was a Metropolitan Police Department (MPD) Sergeant. We hold that we lack jurisdiction, and we therefore dismiss the petition for review.

## I. Factual and Procedural Background

Except as noted, the following appears to be undisputed. Sergeant Eckenrode was an MPD officer for over twenty years. In 2006, he injured his left knee while on duty. He underwent two knee surgeries as a result of that injury. In 2019, his left knee buckled while on duty. He underwent a third knee surgery in September 2019. Shortly thereafter, he felt pain in his left leg that was diagnosed as having been caused by deep vein thrombosis, i.e., a blood clot in a vein in his leg. Deep vein thrombosis can be caused by leg surgery.

Sergeant Eckenrode received treatment, and he was informed in January 2020 that his deep vein thrombosis had resolved. In March 2020, Sergeant Eckenrode felt pain in his right calf. That pain was diagnosed as being caused by a slight muscle tear. The pain was gone by April 1, 2020.

On April 6, 2020, Sergeant Eckenrode, while on duty, suddenly was short of breath and felt chest pain. He was taken to the hospital, where he passed away approximately three hours later.

The Office of the Chief Medical Examiner conducted an autopsy and determined that Sergeant Eckenrode's death was caused by a pulmonary embolus, i.e., a blood clot in the lungs, due to deep vein thrombosis. Pulmonary embolism is a rare complication of deep vein thrombosis. The autopsy listed hypertensive cardiovascular disease (i.e., chronic high blood pressure) and hepatic steatosis (i.e., fatty liver disease) as "other significant conditions." The autopsy stated that the manner of death was "NATURAL."

The director of the Police and Fire Clinic concluded that Sergeant Eckenrode's death was in the line of duty.

Respondent, the District of Columbia Police and Firefighters Retirement and Relief Board (Board), awarded Ms. Eckenrode a survivor annuity pursuant to D.C. Code § 5-716(b) (providing for annuity of 40% of officer's pay). MPD then asked the Board to determine whether Ms. Eckenrode was instead entitled to enhanced survivor benefits pursuant to D.C. Code § 5-716(a). Such benefits are given to an eligible surviving spouse if an officer "dies in the performance of duty" and the death "was the sole and direct result of a personal injury sustained while performing such

duty." D.C. Code § 5-716(a)(1)(A). Enhanced survivor benefits consist of a $50,000 lump-sum payment and an annuity equal to the full amount of the officer's pay at the time of death. D.C. Code § 5-716(a)(2), (a-1). To be eligible for enhanced survivor benefits, the surviving spouse must have received more than half of the survivor's support from the officer. D.C. Code § 5-716(a)(2).

After obtaining additional medical records, the Board issued an order determining that Ms. Eckenrode was not entitled to enhanced survivor benefits. The Board concluded that there was insufficient evidence that Sergeant Eckenrode's death was the sole and direct result of his knee injury. In support of that conclusion, the Board reasoned, among other things, that (1) death is a "sole and direct result" of an injury only if there are no "intervening factors"; (2) although a doctor at the Police and Fire Clinic opined that Sergeant Eckenrode's death was more likely than not a complication of Sergeant Eckenrode's knee injury, the Board determined that the autopsy report and the conclusions of the deputy medical examiner who conducted the autopsy were "particularly important"; and (3) the deputy medical examiner did not believe that Sergeant Eckenrode's death was the sole and direct result of the knee injury because there were several other contributing factors—heart disease, "fatty liver," and that Sergeant Eckenrode was fairly sedentary after his most recent knee surgery.

Ms. Eckenrode sought reconsideration and provided additional medical records. The Board denied reconsideration.

## II. Analysis

Ms. Eckenrode seeks direct review in this court of the Board's denial of enhanced survivor's benefits. We hold that we lack jurisdiction.

Under the District of Columbia Administrative Procedure Act, this court has direct jurisdiction to review agency action only in a "contested case." D.C. Code § 2-510(a). A proceeding is a contested case if a party to the proceeding is entitled by law to an administrative "adjudicative, trial-type hearing to determine the party's legal rights, duties, or privileges." *Farrell v. D.C. Police & Firefighters Ret. & Relief Bd.*, 151 A.3d 490, 492 (D.C. 2017) (citation modified); *see also* D.C. Code § 2-502(8) (generally defining "contested case" as "a proceeding before the Mayor or any agency in which the legal rights, duties, or privileges of specific parties are required by any law . . . or by constitutional right, to be determined after a hearing before the Mayor or before an agency"). If an administrative decision is not reviewable directly in this court, then review, unless precluded altogether, is available in the first instance in the Superior Court. *See, e.g.*, *Nunnally v. D.C. Metro. Police Dep't*, 80 A.3d 1004, 1008 (D.C. 2013) ("[I]f a claim falls outside of the definition of a contested case, any party aggrieved by an agency's decision may

initiate an appropriate equitable action in the Superior Court to seek redress.") (citation modified).

"[A] trial-type hearing is one that incorporates due-process protections such as representation by counsel, cross-examination of adverse witnesses, and fact-finding by an impartial adjudicator." *Mathis v. D.C. Hous. Auth.*, 124 A.3d 1089, 1099 (D.C. 2015) (citation modified). "The right to obtain pre-hearing discovery, and to make opening and closing arguments[,] are other accoutrements of a trial-type hearing." *Id.* (citation modified).

Although survivor-benefit proceedings before the Board are adjudicative, we have already held that persons seeking survivor benefits do not have a statutory or regulatory right to a trial-type hearing before the Board. *Farrell*, 151 A.3d at 492-96. Whether we have jurisdiction to directly review the Board's decision in this case thus turns on whether Ms. Eckenrode has a constitutional right to a trial-type hearing before the Board. We hold that she does not.

Ms. Eckenrode argues that (1) she has a protected property interest in receiving enhanced survivor benefits, (2) she therefore has a constitutional right to due process with respect to the Board's determination of her claim, and (3) due process entitles her to a trial-type hearing before the Board. The Board appropriately does not dispute that Ms. Eckenrode has a protected property interest in the enhanced

survivor benefits that she seeks and that she therefore is constitutionally entitled to due process before the Board. *See, e.g.*, *Baltimore v. District of Columbia*, 10 A.3d 1141, 1154 (D.C. 2011) ("To have a [constitutionally protected] property interest in a government benefit, a person clearly must . . . have a legitimate claim of entitlement to it. Entitlements derive from an independent source such as state law, i.e., statutes or regulations that secure certain benefits and that support claims or entitlements to those benefits.") (citation modified); D.C. Code § 5-716(a) & (a-1) (providing that survivor "shall" receive enhanced survivor benefits if statutory requirements are met); *cf. Jackson v. D.C. Police & Firefighters Ret. & Relief Bd.*, 717 A.2d 904, 906-07 (D.C. 1998) (for purposes of interpreting separation agreement, finding that survivor had property interest in annuity because survivor was "automatically . . . entitled to annuity benefits" "upon the happening of a contingency").

We thus must decide whether Ms. Eckenrode was constitutionally entitled to a trial-type hearing before the Board decided her claim of entitlement to enhanced survivor benefits. *See generally, e.g.*, *Richard Milburn Pub. Charter Alt. High Sch. v. Cafritz*, 798 A.2d 531, 541 (D.C. 2002) ("[I]f [constitutionally] protected interests are at issue, we must then determine what procedures are required to satisfy due process."). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To

determine what procedural protections are constitutionally required we must balance:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

"The ordinary principle, established by Supreme Court decisions, [is] that something less than a trial-type hearing is sufficient prior to adverse administrative action." *Donnelly Assocs. v. D.C. Hist. Pres. Rev. Bd.*, 520 A.2d 270, 279 (D.C. 1987) (citation modified; quoting *Mathews*, 424 U.S. at 343); *see also, e.g.*, *Rones v. D.C. Dep't of Hous. & Cmty. Dev.*, 500 A.2d 998, 1001 (D.C. 1985) ("A trial-type hearing is rarely required prior to the termination of governmental benefits. All that is required is the opportunity to be heard in a meaningful manner.") (citation modified). "The burden is on petitioner to persuade us to depart from" that ordinary principle. *Donnelly*, 520 A.2d at 279. We conclude that Ms. Eckenrode has failed to demonstrate that she had a constitutional right to a trial-type hearing before the Board ruled as to whether she was entitled to enhanced survivor benefits.

## A. The Private Interest

As a threshold matter, we note that in assessing the private interest for purposes of determining what process is constitutionally due, we must focus generally on the class of people as to whom such determinations would be made, not on a given claimant. *See, e.g.*, *Donnelly*, 520 A.2d at 282 ("The *Mathews v. Eldridge* test . . . is applied to the generality of cases; the fundamental fairness of a particular procedure does not turn on the result obtained in any individual case.") (citation modified). We therefore consider the private interest of the general class of persons seeking enhanced survivor benefits, not the private interest of Ms. Eckenrode in particular given her circumstances. *See id.*

Persons seeking an enhanced survivor benefit will have already received an annuity of forty percent of their spouse's salary, although the precise way of calculating the relevant salary varies. D.C. Code § 5-716(b). At issue will be whether they are entitled instead to a lump sum of $50,000 and full replacement of their spouse's salary. D.C. Code § 5-716(a)(2), (a-1). The interest in obtaining enhanced survivor benefits thus is substantial. We conclude, however, that Ms. Eckenrode has not demonstrated that it is the type of interest that constitutionally requires a predetermination trial-type hearing.

"In only one case, *Goldberg v. Kelly*, 397 U.S. 254 (1970), has the [Supreme] Court required a full adversarial evidentiary hearing prior to adverse governmental action." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985). *Goldberg* involved a decision to cut off public-assistance benefits. 397 U.S. at 255. In holding that a pretermination evidentiary hearing was required, the Supreme Court emphasized that, "For qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care." *Id.* at 264. The Court explained that the "crucial factor in this context" was that "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while [the recipient] waits." *Id.* As the Court further explained, that factor is "not present in the case of the blacklisted government contractor, the discharged government employee, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended." *Id.*

This court has also only once held that due process required a predetermination trial-type hearing. *Powell v. D.C. Hous. Auth.*, 818 A.2d 188 (D.C. 2003). *Powell* involved termination of housing subsidies under a public housing program "designed to assist lower income families in obtaining the necessities of life." *Id.* at 194. We concluded that permanent termination from the program based on an allegation of fraud required a pretermination trial-type hearing. *Id.* at 194-96.

No showing has been made in this case that the Board's decision to deny applications for enhanced survivor benefits typically would present a risk that applicants would be unable to obtain the necessities of life during the pendency of a post-determination challenge to the denial. To the contrary, eligibility for enhanced survivor benefits is not limited to persons whose access to the necessities of life is at stake. An applicant with substantial assets (such as equity in a home or investment principal) would apparently be eligible, as long as the applicant received more than half of the applicant's "support" from the officer. D.C. Code § 5-716(a)(2), (a-1); *cf., e.g.*, *In re Marriage of Pearlstein*, 40 Cal. Rptr. 3d 910, 919 (Ct. App. 2006) (distinguishing between "support payments," which "usually are paid from present earnings," and assets such as equity in home or investment principal). Moreover, eligibility does not depend on whether the officer's "support" was based solely on the officer's salary. D.C. Code § 5-716(a)(2) (referring generally to amount of support from officer, with no limitation as to source of support). Thus, an officer's support could be based in part on other sources of income that would survive the officer's death (e.g., income from a rental property). In other words, an applicant could theoretically be eligible even if the officer's salary contributed less than half of the overall support the officer had provided to the applicant.

On the other hand, the worst-case scenario would be an applicant who had no assets and no income other than the officer's salary. In such a case, a standard

forty-percent annuity would be a very substantial reduction in household income. It is certainly at least possible that in some instances such a reduction could create concerns about an applicant's ability to maintain access to the necessities of life while awaiting resolution of a judicial challenge to the Board's determination. As previously noted, however, we must assess the nature of the private interest at stake by considering "the generality of cases," not a worst-case scenario. *Donnelly*, 520 A.2d at 282.

We do not minimize the significance of enhanced survivor benefits to surviving spouses. We also acknowledge this court's statement in dicta that although "full procedural protections" have been constitutionally required before "adverse administrative action" that deprives people of "the very means by which to live, . . . we do not say that [such] extreme adverse consequences must always be present." *Donnelly*, 520 A.2d at 282 (citation modified). We therefore turn to the decisions of the Supreme Court, this court, and other courts addressing the private interest of persons who seem comparably situated to applicants for enhanced survivor benefits. Those decisions consistently hold that the private interests at issue did not suffice to confer a constitutional right to a predetermination trial-type hearing.

For example, in *Mathews*, the Supreme Court held that a person whose social-security disability benefits were terminated did not have a right to a pretermination evidentiary hearing. 424 U.S. at 349. In assessing the private interest at issue, the Supreme Court explained that eligibility for social-security disability benefits is "not based upon financial need" and instead

> is wholly unrelated to the worker's income or support from many other sources, such as earnings of other family members, [workers'] compensation awards, tort claims awards, savings, private insurance, public or private pensions, veterans' benefits, food stamps, public assistance, or the many other important programs, both public and private, which contain provisions for disability payments affecting a substantial portion of the work force.

*Id.* at 341 (citation modified).

The Court in *Mathews* therefore concluded that the potential deprivation as a result of the termination of social-security disability benefits was "generally likely to be less than" the loss of welfare benefits in *Goldberg*. *Mathews*, 424 U.S. at 341. The Court acknowledged that persons are eligible for social-security disability benefits only if they are "unable to engage in substantial gainful activity." *Id.* (citation modified). Thus, even temporary loss of disability benefits could impose significant "hardship . . . upon the erroneously terminated disability recipient." *Id.* at 342. The Court emphasized, however, both the possibility of "access to private resources" and the availability of alternate forms of government assistance if "the termination of disability benefits places a worker or his family below the subsistence

level." *Id.* The Court concluded, "In view of these potential sources of temporary income, there is less reason here than in *Goldberg* to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Id.* at 343.

The disability benefit at issue in *Mathews* differs in several respects from the enhanced survivor benefits at issue in the present case. For example, unlike social-security disability benefits, eligibility for enhanced survivor benefits is not wholly unrelated to income, given the requirement that the applicant have received more than half of the applicant's support from the officer. D.C. Code § 5-716(a)(2). On the other hand, to be eligible for social-security disability benefits, the claimant must be unable to supplement income through "substantial gainful activity," *Mathews*, 424 U.S. at 341 (citation modified), whereas there is no requirement that an applicant for enhanced survivor benefits be unable to supplement the lost income from the officer by increasing the applicant's income through other means. Moreover, for reasons already noted, Ms. Eckenrode has failed to show that the Board's denial of enhanced survivor benefits is likely to deprive applicants of the necessities of life pending review of the Board's decision. On balance, we conclude that the reasoning and holding of *Mathews* point strongly against the claim that applicants for enhanced survivor benefits have a constitutional right to a trial-type hearing before the Board decides on their applications.

Other Supreme Court cases and cases from this court also point against the conclusion that applicants for enhanced survivor benefits have a private interest of the kind that constitutionally requires a predetermination trial-type hearing. *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 333 (1985) (holding that veterans applying for service-connected death or disability benefits do not have due-process right to be represented by counsel; veterans' interests are "more akin to the Social Security benefits involved in *Mathews* than they are to the welfare payments upon which the recipients in *Goldberg* depended for their daily subsistence"); *Loudermill*, 470 U.S. at 545 (holding that full evidentiary hearing not required before government employee is terminated; distinguishing *Goldberg*); *Walker v. D.C. Off. of Emp. Appeals*, 310 A.3d 597, 604 (D.C. 2024) (same; "While termination of employment undeniably has a profound effect on someone's life, the Supreme Court's decision in *Goldberg* was focused on the distinct and dire situation that someone reliant on public benefits, by definition low-income and often already without employment, would face if those benefits were unjustly terminated, and the Court specifically distinguished this scenario from that of the discharged government employee . . . .") (citation modified); *District of Columbia v. Jones*, 442 A.2d 512, 523 (D.C. 1982) (holding that police officer injured in line of duty was not constitutionally entitled to call witnesses and to cross-examine government witnesses with respect to determination of claim for paid sick leave).

Cases from other jurisdictions overwhelmingly support the conclusion that applicants for enhanced survivor benefits do not have a private interest of the kind that constitutionally requires a predetermination trial-type hearing. Most directly on point are decisions involving police or firefighter disability determinations. *See, e.g.*, *McDarby v. Dinkins*, 907 F.2d 1334, 1337-39 (2d Cir. 1990) (holding that police officer seeking enhanced accident-disability benefits did not have constitutional due-process right to predetermination trial-type hearing; citing cases); *Rosenthal v. Bd. of Trs. of N.Y.C. Police Pension Fund*, 999 F. Supp. 498, 504-06 (S.D.N.Y. 1998) (holding that police officer seeking enhanced disability benefits was not constitutionally entitled to predetermination trial-type hearing; although officer had "a property interest in receiving a higher monetary pension, this interest is far less compelling than that of an individual denied by government action the very means by which to live") (citation modified).

Many courts have reached the same conclusion with respect to other administrative decisions that cause loss of income or denial of government benefits intended to compensate for loss of income. *See, e.g.*, *Pagan v. Carey Wiping Materials Corp.*, 73 A.3d 784, 790-91 (Conn. App. Ct. 2013) (holding that workers' compensation benefits could be terminated without predetermination evidentiary hearing; "Although there is little possibility that an injured worker will be able to find even temporary employment to ameliorate the interim loss, a claimant may have

other resources to sustain [the claimant] during the post-termination period or may qualify for public assistance.") (citation modified); *Sauceda v. Dep't of Lab. & Indus.*, 917 F.2d 1216, 1219 (9th Cir. 1990) (holding that worker's compensation benefits could be suspended without pre-suspension evidentiary hearing; "[A]ppellants' desire for uninterrupted disability payments pending final administrative decision on their cases[] does not require an evidentiary hearing prior to suspension. While this interest may, in some cases, be significant, disability claimants do not necessarily live on the very margin of subsistence.") (citation modified); *Campo v. N.Y.C. Emps.' Ret. Sys.*, 843 F.2d 96, 100 (2d Cir. 1988) (holding that spouse of government employee did not have due-process right to agency evidentiary hearing relating to employee's retirement benefits, given that spouse had right of judicial review); *Basciano v. Herkimer*, 605 F.2d 605, 609-11 (2d Cir. 1978) (holding that public employee seeking accident-disability retirement benefit did not have constitutional due-process right to predetermination trial-type hearing; "While [the employee] had a substantial interest in the outcome of the proceeding, his interest was less compelling than that of an individual denied by government action the very means by which to live . . . .") (citation modified); *Graves v. Meystrik*, 425 F. Supp. 40, 48 (E.D. Mo. 1977) (holding that unemployment-compensation claim could be denied without predetermination evidentiary hearing; "Neither the termination of disability benefits in *Mathews* nor

the termination of unemployment benefits in the case at bar would deprive a claimant of the very means by which to live while [the claimant] waits for a post-termination evidentiary hearing. Here, as in the case of disability benefits, there is a possibility of access to private resources[,] and[] other forms of government assistance will become available where the termination of disability benefits places a worker or [the worker's] family below the subsistence level. Further, eligibility for welfare benefits is based on financial need, but eligibility for unemployment benefits [is] not. An individual could have $1,000,000 in a savings account and nonetheless be entitled to unemployment benefits.").

In sum, we conclude that the private interest of applicants for enhanced survivor benefits, although clearly substantial, is not of a nature so as to constitutionally require a predetermination trial-type hearing before the Board.

**B. Risk of Erroneous Deprivation/Additional Procedural Safeguards**

To decide on an application for enhanced survivor benefits, the Board must determine several issues: whether the officer suffered an injury while performing the officer's duties, whether the officer's death "was the sole and direct result of" that injury, and whether the claimant received more than half of the claimant's support from the officer. D.C. Code § 5-716(a), (a-1). We take as a given that a trial-type hearing would reduce the risk that the Board would resolve those issues incorrectly.

In determining whether the absence of a trial-type hearing before the Board creates a constitutionally unacceptable risk of erroneous deprivation, however, we must consider the availability of post-determination judicial review. *See, e.g.*, *Mathews*, 424 U.S. at 349 (in concluding that disability claimant was not entitled to pretermination trial-type hearing before agency, Court relies in part on availability of "subsequent judicial review"); *Burkhardt v. D.C. Rental Hous. Comm'n*, 198 A.3d 183, 192 (D.C. 2018) (in holding that tenants are not entitled to trial-type hearings before Rent Administrator's determination of temporary-eviction applications, court relies on availability of judicial remedies); *Campo*, 843 F.2d at 100 (in holding that spouse of government employee did not have due-process right to agency evidentiary hearing relating to employee's retirement benefits, court relies in part on spouse's right of judicial review); *Rosenthal*, 999 F. Supp. at 506 (in holding that police officer seeking enhanced disability benefits was not constitutionally entitled to predetermination trial-type hearing, court relies in part on availability of meaningful post-determination judicial review); *cf., e.g.*, *Cloutier v. Town of Epping*, 714 F.2d 1184, 1192 (1st Cir. 1983) (in context of denial of development permit, court holds that "prompt, informal proceedings . . . coupled with the judicial review provided by the state courts satisfied the requirements of the due process clause").

As noted earlier, *supra* at 5-6, if applications for enhanced survivor benefits are not contested cases, then applicants whose claims are denied by the Board have

the right to seek judicial review in the Superior Court. *See, e.g.*, *Nunnally*, 80 A.3d at 1008. Given the availability of judicial review, we conclude that concerns about the risk of an erroneous determination do not require that the Board provide a trial-type proceeding before deciding claims for enhanced survivor benefits. That was the conclusion of the cases we have just cited in their various contexts, and we see no adequate basis for reaching a different conclusion in the present case.

In reaching this conclusion, we express no view on two related issues. First, we have no occasion to decide whether the procedural rights afforded by the Board are constitutionally adequate in all respects. We decide only that the Due Process Clause does not compel the Board to provide applicants for enhanced survivor benefits with a trial-type hearing. Given our conclusion that this is not a contested case, we lack jurisdiction to address any claim that the procedures before the Board otherwise fell short of what the Due Process Clause requires. If such a claim is to be raised, it would need to be presented first to the Superior Court.

Second, we have no occasion to decide what procedural protections applicants for enhanced survivor benefits are entitled to in Superior Court. For current purposes, we can assume without deciding that the Due Process Clause entitles applicants for enhanced survivor benefits to a trial-type hearing as part of post-determination judicial review in Superior Court. If that is the case, then the

Superior Court will necessarily provide such a hearing, which is something that the Superior Court is obviously well suited to provide given that it is a trial court. "We therefore can leave for another day," and in the first instance for another court, "the question of precisely what protections the Due Process Clause requires in an action" in Superior Court seeking judicial review of a decision by the Board denying an application for enhanced survivor benefits. *Burkhardt*, 198 A.3d at 191.

## C. Governmental Interest

Although the Board argues that it would be burdensome to require the Board to conduct trial-type hearings before deciding applications for enhanced survivor benefits, we are skeptical of that argument. The Board already provides such hearings to certain applicants for benefits. *See Farrell*, 151 A.3d at 493; 7 D.C.M.R. § 2505. It appears to be undisputed that the number of applications for enhanced survivor benefits would likely be rather small. We do not view this factor as favoring the Board.

## D. Balancing

Although we do not believe that a heavy administrative burden would be imposed if the Board provided trial-type hearings to applicants for enhanced survivor benefits, we conclude that the Due Process Clause does not require the

Board to provide such hearings. Applicants' interest in obtaining enhanced survivor benefits, though substantial, is not the kind of immediately critical interest that constitutionally mandates a predetermination trial-type hearing. Rather, as the cases we have cited have held, administrative determination of such interests can permissibly rest on less formal procedures subject to subsequent judicial review, including post-determination trial-type hearings if those are constitutionally required. In other words, we hold that this case is governed by "the ordinary principle . . . that something less than a trial-type hearing is sufficient prior to adverse administrative action." *Donnelly*, 520 A.2d at 279 (citation modified).

We therefore conclude that this is not a contested case and that we lack jurisdiction to directly review the order of the Board. Ms. Eckenrode instead must seek review in the Superior Court in the first instance. We note that the Board's regulations incorrectly directed Ms. Eckenrode to seek review in this court. 7 D.C.M.R. § 2529.2. The Board therefore appropriately acknowledges that it would be impermissible for the Board to argue that Ms. Eckenrode is time-barred from seeking review in Superior Court. *See Farrell*, 151 A.3d at 496 (noting similar acknowledgment).

**E. Response to the Dissenting Opinion**

1. The dissenting opinion accurately notes that the availability of post-determination judicial review was not raised in the Board's brief. *Post* at 30 n.1. As the dissenting opinion elsewhere acknowledges, *id.* at 26, however, we have a sua sponte duty to determine our jurisdiction. *See, e.g.*, *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022) ("Jurisdictional requirements cannot be waived or forfeited [and] must be raised by courts *sua sponte . . . .*").

The dissenting opinion also notes that we have not asked for supplemental briefing on the significance of post-determination judicial review. *Post* at 30 n.1. We see no reason to ask for supplemental briefing on that point. When the point was raised at oral argument, counsel for Ms. Eckenrode acknowledged that it was her burden to show that she had a right to a predetermination trial-type hearing, relied on cases cited in her supplemental brief in support of her argument, did not object that the point had not been properly raised, and did not request supplemental briefing.

2. The dissenting opinion takes the view that the Superior Court would be required by existing law to conduct only limited judicial review of the Board's decision. *Post* at 30-31 & n.2. That suggestion is unpersuasive for several reasons. First, if the Due Process Clause entitles Ms. Eckenrode to more robust judicial

review of the Board's action, then the non-constitutional principles that the dissenting opinion relies upon would have to yield to the requirements of the Constitution. Second, as we have already noted, the Superior Court is obviously well suited to provide whatever process the Due Process Clause requires, given that it is a trial court. Third, it is less clear than the dissenting opinion suggests that the Superior Court's review of agency decisions must always be limited to the type of review that is given to agency action in contested cases under the District of Columbia Administrative Procedure Act, D.C. Code § 2-501 et seq. *See, e.g.*, *Am. Univ. in Dubai v. D.C. Educ. Licensure Comm'n*, 930 A.2d 200, 204 (D.C. 2007) (plaintiff filed declaratory-judgment action one year after agency action and parties conducted discovery before court granted summary judgment); *see generally District of Columbia v. Sierra Club*, 670 A.2d 354, 359 (D.C. 1996) ("The availability of review by this court of agency decisions in contested cases—those in which trial-type proceedings are required at the agency level—does not preclude judicial review in other matters, because any party aggrieved by an agency's decision may initiate an appropriate equitable action in the Superior Court to seek redress.") (citation modified).

3. The dissenting opinion criticizes the opinion for the court for failing to lay out precisely what form of post-determination judicial review Ms. Eckenrode is entitled to in the Superior Court. *Post* at 30. Our failure to be more specific, however,

is dictated by our conclusion that we lack jurisdiction over this case. Given that conclusion, it is impermissible for us at this time to express views about what Ms. Eckenrode's rights are in the Superior Court. *See, e.g.*, *Builta v. Guzman*, 324 A.3d 269, 293 (D.C. 2024) ("Lacking jurisdiction, we must refrain from addressing the merits . . . ."). That question would have to be decided in the first instance by the Superior Court, which would have jurisdiction over the case. Of course, this court would have appellate jurisdiction to address the question if a party appealed the ruling of the Superior Court.

4. The dissenting opinion states that enhanced-survivor benefits are "conditioned on a showing of financial need." *Post* at 33-34. We disagree. Eligibility for enhanced survivor benefits is conditioned on several things, one of which is that the decedent's salary constituted more than half of the applicant's "support." D.C. Code § 5-716(a)(2). As we have explained, *supra* at 11-12, showing a diminution in support does not necessarily establish financial need.

5. Finally, we note that the dissent does not cite a single case holding that a claimant seeking comparable government benefits was entitled under the Due Process Clause to a predetermination trial-type hearing. To the contrary, numerous decisions have held that claimants seeking similar government benefits intended to

address loss of income were not entitled to a predetermination trial-type hearing. *See supra* at 13-22.

For the foregoing reasons, we dismiss Ms. Eckenrode's petition for review for lack of jurisdiction.

*So ordered.*

RUIZ, *Senior Judge*, dissenting: I find myself unable to join the majority opinion which, in my view, proceeds from a flawed analytical framework that upends this court's obligation to determine and exercise its jurisdiction and misapplies Supreme Court precedent.

This case concerns one of the legal system's foundational underpinnings, which is that courts must assure themselves of their jurisdiction. Indeed, subject matter jurisdiction is so key a requirement that its absence may be raised "at any stage" of the litigation and cannot be waived by either the conduct or the consent of the parties. *Gosa v. Mayden*, 413 U.S. 665, 707 (1973) (Douglas, J., concurring). Even if the issue goes unraised by counsel, the Court of Appeals has "an independent obligation to confirm our own jurisdiction before ruling on the merits of a case." *D.C. Dep't of Corr. v. D.C. Dep't of Emp. Servs.*, 308 A.3d 699, 702 (D.C. 2023).

Equally critical is the principle that, once a court determines it has jurisdiction, it should adjudicate the case in question itself rather than cede it to a court which lacks such jurisdiction. In the context of administrate review, contested case jurisdiction lies exclusively with this court. *Ne. Neighbors for Responsible Growth, Inc. v. AppleTree Inst. for Educ. Innovation, Inc.*, 92 A.3d 1114, 1121 (D.C. 2014). "It is well-established that [D.C. Code § 2-510] 'provides for exclusive appellate review of administrative action in contested cases, and thereby precludes concurrent

jurisdiction in the Superior Court.'" *Id.* at 1122 (quoting *Fair Care Found., A.G. v. D.C. Dep't of Ins. & Sec. Regul.*, 716 A.2d 987, 997 (D.C. 1998)).

Accordingly, this court must determine at the outset whether contested case jurisdiction exists; if it does, we must consider Ms. Eckenrode's claim, for there is no other District of Columbia court which is empowered to do so. The majority's opinion fails at this critical first step. Although it decides that Ms. Eckenrode is not entitled to a trial-type hearing before the Board as a matter of due process—the issue that determines our contested case jurisdiction—the majority effectively defers both what type of hearing due process requires and its implementation to the Superior Court. At the second step of the due process analysis, the majority opinion justifies the lack of a full hearing before the Board by stating that the "availability of judicial review" in the Superior Court would mitigate the lack of a pre-determination hearing before the Board. *Ante* at 20. I can agree with that proposition in theory but, without specification of the source of the Superior Court's authority and contours of the permissible scope of the Superior Court's review, it does not go as far as the majority would have it, to deny contested case jurisdiction.

The majority relies on *Burkhardt v. District of Columbia Rental Housing Commission*, *ante* at 19, where we concluded that the Rent Administrator need not conduct a trial-type hearing before approving temporary eviction applications in

light of the settled availability of a judicial trial in Superior Court. *Burkhardt*, 198 A.3d 183, 191 (D.C. 2018). We could confidently conclude that, as a result, it was not a contested case and we did not have jurisdiction. But the situation in *Burkhardt* was very different because even where temporary eviction applications were approved by the agency, it was well-established that the tenants "could be physically evicted" by the landlord "only if the housing provider filed an action for possession and established in judicial proceedings an entitlement to temporary possession of the tenants' units" as our jurisdiction's bar on self-help evictions guarantees "the availability of a judicial trial to contest eviction from a rental unit" before the crucial deprivation (eviction) actually occurred. *Id.* at 190-91. In other words, existing law clearly provided for a trial-type hearing in Superior Court separate and apart from the due process analysis.

That is not the situation here. Unlike in *Burkhardt*, Ms. Eckenrode does not have an existing right to full judicial review in Superior Court of the Board's determination. The majority "take[s] as a given" that a trial-type hearing "would reduce the risk that the Board would resolve" Ms. Eckenrode's case correctly, and for good reason. *Ante* at 18. The Board, after being asked to resolve an issue of medical causation, did not provide Ms. Eckenrode with a forum to effectively question the written report and cross-examine the Medical Examiner upon which it relied. Instead, recognizing ambiguities in the report, it sought "clarification" of the

report's conclusion about the cause of Sergeant Eckenrode's death. It did so through an ex parte, unrecorded and untranscribed telephone conversation with the Office of the Chief Medical Examiner and used what it purported to have learned during this conversation to deny Ms. Eckenrode's claim. Contrary to the majority's suggestion, we cannot gloss over these procedural shortcomings at the Board by asking the Superior Court to determine the process which Ms. Eckenrode is due and then figure out how to comply with the demands of due process.

The majority opinion is disturbingly vague about the form that the Superior Court's review should take, stating only that *if* Ms. Eckenrode is entitled to a trial-type hearing, *then* "the Superior Court will necessarily provide such a hearing" to her, citing its general equity jurisdiction. *Ante* at 20-21.[1] But if the Superior Court determines that a trial-type hearing is required, the majority does not identify the rule or procedure by which the Superior Court may provide such a hearing itself separate and apart from the norms we have established for review of administrative action. Indeed, our case law is to the contrary: when the Superior Court reviews an

---

[1] The government did not make the argument in its brief nor at oral argument that the availability of post-determination judicial review resolved any due process concern and determined the court's lack of jurisdiction. That suggestion came from the bench during oral argument and government counsel went along, but there was no resolution as to whether and how such judicial review would or could be available in this case. The court did not request supplemental briefing from the parties on this issue.

agency determination in a non-contested case, it "must apply the same level of review that this court uses when reviewing contested cases"—that is to say, it must review "the administrative record alone and not duplicate agency proceedings or hear additional evidence." *In re A.T.*, 10 A.3d 127, 134-35 (D.C. 2010) (citations omitted). The majority opinion simply says that the Superior Court must do what due process requires. *Ante* at 21. If this expansive authority exists, our court's jurisprudence appears to have missed it for many years.[2]

Instead, any review that the Superior Court conducts should necessarily be deferential—that is, it is limited to determining whether the Board's denial was "arbitrary, capricious, or an abuse of discretion or contrary to law." *In re A.T.*, 10 A.3d at 135 (citations omitted). If the Board failed to follow the demands of due

---

[2] The majority posits that it is "less clear" the Superior Court's review will necessarily be deferential. *Ante* at 25. Yet the cases it cites in support of this point are unavailing. *Am. Univ. in Dubai v. D.C. Educ. Licensure Comm'n*, 930 A.2d 200 (D.C. 2007) concerned a legislative, not an adjudicative, action. *Id.* at 207. With respect to the nature of the equitable action in Superior Court, we were careful to explain that it was a "complaint . . . to enforce a statutory requirement" and not "a petition for review of a particular agency order." *Id.* at 206. *District of Columbia v. Sierra Club*, 670 A.2d 354 (D.C. 1996), also did not involve a petition for review of an agency adjudication of an individual claim but a complaint for an injunction to compel the District to implement the recycling program created by statute. *Id.* at 356, 359. Ms. Eckenrode has filed a petition for review of a particular agency order adjudicating her request for an enhanced survivor benefit. This is the type of petition for review we have consistently held is reviewed under the APA's deferential standards. *See, e.g.*, *In re A.T.*, 10 A.3d at 134-35.

process, then the Board's decision would necessarily be contrary to law. Here lies the conundrum at the heart of the majority's analysis. Should the Superior Court determine that the Board's decision rested on inadequate factual development and an unfair process—and that due process requires a trial-type hearing—the Superior Court, mindful of the constraints on its scope of review of agency action, would, in the normal course, remand the case to the Board to provide the constitutionally required hearing. *See, e.g.*, *Barry v. Wilson*, 448 A.2d 244, 246 (D.C. 1982) (noting trial court erred where it "essentially retried [the] case and reweighed the evidence," and its order "reflects a trial de novo."). That would mean that this court had contested case jurisdiction all along, but impermissibly relinquished it to the Superior Court. However, as this procedural avenue is now precluded by the majority's opinion, the Superior Court is left to adjudicate de novo cases that the statute has committed to the Board's discretion for decision.

It is our responsibility to determine what due process requires in the first instance because it is determinative of our jurisdiction. I would not defer this core issue to the trial court, and would instead conclude that we have jurisdiction over Ms. Eckenrode's appeal because due process requires a trial-type hearing before the Board makes a determination to deny enhanced benefits to the survivor of an officer who has died in the line of duty from an injury incurred in the performance of that duty.

## I. The *Mathews* three-factor balancing test

The first factor in the *Mathews* balancing test, the nature and severity of the private interest involved, is perhaps one as to which reasonable people may have different views. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As the majority opinion notes, we assess this factor by considering the "'generality of cases[,]' not a worst-case scenario." *Ante* at 12 (citing *Donnelly Assocs. v. D.C. Hist. Pres. Rev. Bd.*, 520 A.2d 270, 282 (D.C. 1987)). But that does not mean that Ms. Eckenrode's particular case cannot be viewed as illustrative of the financial struggles of the generality of surviving spouses of police officers. Ms. Eckenrode is a working mother with three young children. She explained that her household has "always depended on a 2 [person] salary," and that the 40% unenhanced survivor annuity the Board awarded does not even cover their monthly mortgage, much less other basic expenses. Without at least 85% of Officer Eckenrode's salary, she "will not be able to provide for [her] kids." There is no evidence contradicting these assertions. The majority cites a number of cases involving disability, social security, pension benefits, and sick pay for the proposition that they are not comparable to *Goldberg* because they do not require a showing of financial need. *Ante* at 13-17. These cases are inapt because the enhanced benefit Ms. Eckenrode claims is expressly conditioned on a showing of financial need: that she was dependent on her deceased

spouse for more than half of her support. D.C. Code § 5-716(a)(2). The government does not dispute that she meets the statutory requirement of financial need.

The numbers support Ms. Eckenrode's strained finances. The record indicates Officer Eckenrode's total pay was $123,111.00. Forty percent of that amount (which is the amount of his salary that Ms. Eckenrode will receive without the enhanced annuity) is $49,244.40. This means that when Officer Eckenrode passed away, his surviving family of four suddenly had a shortfall of $73,866.60 a year less than when he was alive. Under such circumstances, a recently bereaved family denied a pre-deprivation hearing may be unable to pay rent, make car payments, or afford school tuitions and childcare while their appeal is pending. There is no reason in the record to think that families like Sergeant Eckenrode's are not representative of the class which enhanced survivor annuities are meant to benefit—and they are probably more representative than the majority opinion's purely hypothetical surviving spouse with "substantial assets" or "income from a rental property." *Ante* at 11. Just as we cannot assume that members of this class experience the "worst-case" scenario, *ante* at 11-12, it is equally inappropriate to assume, without any evidence, that likely survivors have extra sources of income. Sure, there might be some, but there is no evidence that the generality of police officers have such comfortable resources. The evidence that is in the record—Ms. Eckenrode's actual financial circumstances—say otherwise.

It is true that Ms. Eckenrode will receive a reduced annuity and she might be able to supplement her family's income by applying for public assistance if their circumstances become even more precarious. But we have stated that a claimant does not have to be utterly destitute for this first factor to weigh in favor of a more full process. *Donnelly*, 520 A.2d at 282. This is particularly the case as the Board makes a one-time permanent determination that defines the level of survivor benefits, unlike the disability benefits at issue in *Mathews* and even the welfare benefits in *Goldberg*, for which a person can reapply and receive a new determination as circumstances change. In *Powell* we considered that the permanent character of a determination of ineligibility for a housing subsidy tipped the due process balance and required a trial-type hearing. *Powell v. D.C. Hous. Auth.*, 818 A.2d 188, 194-96 (D.C. 2003).

For these reasons, I believe that the nature of the financial need required to qualify for an enhanced survivor benefit, coupled with the permanency of the Board's adverse determination, cut in favor of a due process entitlement to a more robust process.

Even if the first factor were a close question, there are two additional *Mathews* factors to consider that further weigh in favor of a trial-type hearing: "the risk of an erroneous deprivation . . . through the procedures used, and the probable value, if

any, of additional or substitute procedural safeguards" and the public interest, including the burden to the government of providing due process safeguards. *Mathews*, 424 U.S. at 335. Ms. Eckenrode's eligibility for the enhanced survivor benefit she seeks turned on whether Sergeant Eckenrode's death was the "sole and direct result" of the injury he incurred in the performance of duty. D.C. Code § 5-716(a)(1)(A). Resolution of that question will involve mixed issues of fact and law that require nuanced assessment of a complete factual record against the proper legal standard. That assessment will be aided by presentation and cross-examination of expert witnesses. As the sketchy record of the irregular ex parte proceeding in this case makes evident, a trial-type hearing would ensure the development of an appropriate record for sound adjudication at the agency level, one this court can then meaningfully review on appeal. *Goldberg*, 397 U.S. at 271. The majority devotes little attention to this factor because it relies on the chimera that post-deprivation judicial review in Superior Court will cure any due process deficiencies. The supposed availability of judicial review is a significant factor in the majority's jurisdictional analysis, even though the majority simultaneously claims that it lacks jurisdiction to ascertain what rights Ms. Eckenrode can enforce in Superior Court. *Ante* at 25.

Finally, "additional or substitute procedural requirement[s]" at the Board level would not impose significant "fiscal and administrative burdens" or otherwise

impinge on the government's interest. *Mathews*, 424 U.S. at 335. The Board acknowledged that claimants for enhanced survivor benefits comprise a "very narrow and small set of individuals" who die in the line of duty from an injury incurred in performing that duty, meet the requisite causation requirement, and have survivors who satisfy the financial need requirement of having been more than 50% financially dependent on the deceased officer. Ensuring adequate pre-deprivation procedures for this admittedly small class of people would impose a de minimis burden on the Board, which already must provide hearings, pursuant to statute, to the disability retirees who comprise the vast majority of claimants. *Farrell v. D.C. Police & Firefighters Ret. & Relief Bd.*, 151 A.3d 490, 493 (D.C. 2017).

Just as there is little downside to the government if hearings are provided to these survivors, there is a clear upside to doing so. In providing benefits for police officers and their surviving families, the legislature has manifested an intention to create a separate, more comprehensive safety net for those who risk their lives in the service of public safety. *See Spencer v. Yerace*, 155 W.Va. 54, 60 (1971) ("[s]ome of the purposes of statutes providing for police pensions are to promote efficacy, to encourage continuity of service, and to protect the employee and his family"); *Phillipson v. Bd. of Admin.*, 473 P.2d 765, 776 (Cal. 1970) ("[p]ension programs for public employees serve two objectives: to induce persons to enter and continue in public service, and to provide subsistence for disabled or retired employees and their

dependents"); *cf. Ridge v. Police & Firefighters Ret. & Relief Bd.*, 511 A.2d 418, 426 (D.C. 1986) ("constru[ing] the retirement statute liberally in light of its humane purpose" when concluding that a disabled police officer was entitled to a retroactive annuity based on statutory interpretation of the Act). Potential recruits and their families will make serious decisions about undertaking the risks of police work at least in part on the expectation that, should the officer die in the performance of that service, their families will still be taken care of. The public interest in future recruitment and police corps morale therefore aligns with individual claimants' interest in a fair process that will enhance the careful consideration and correct determination of claims. *See Goldberg*, 397 U.S. at 266 (noting "the primacy of the public interest in correct eligibility determinations"). Further, safeguarding adequate process for these claimants at the Board—rather than asking the Superior Court to cure (or as the majority seems to suggest, even re-do) faulty proceedings after the fact—supports the efficient adjudication of claims before the administrative forum that the legislature has charged with their adjudication.

In sum, Ms. Eckenrode, though not destitute, has shown serious financial need as required; the Board has permanently denied her claim for enhanced survivor benefits in an irregular proceeding under ad hoc rules that was patently not up to the task before it; and there is minimal burden to the agency, and indeed a benefit, in providing a trial-type hearing in these cases. Balancing these factors, as the Supreme

Court required in *Mathews*, leads me to conclude that Ms. Eckenrode was entitled to a trial-type hearing before she could permanently be deprived of her claim to enhanced survivor benefits. Thus, we have contested case jurisdiction over Ms. Eckenrode's appeal. I would remand to the Board to provide a trial-type proceeding, including an evidentiary hearing that allows for representation by counsel, the presentation of witness testimony under oath, and the cross-examination of witnesses, including medical experts. These are procedural protections which the Board does not currently provide as of right to survivors but acknowledges it "may" grant upon request of an applicant for an enhanced annuity, and which it provides as a matter of course to all officers and former officers seeking disability retirement benefits. *See* 7 D.C.M.R. § 2505.

Because the case should be remanded to the Board for further proceedings, I do not decide at this juncture the merits question of the proper interpretation of the statutory provision that limits eligibility for enhanced survivor benefits to deaths that occur in the line of duty and where the death was the "sole and direct result" of an injury incurred in the performance of duty. D.C. Code § 5-716(a)(1)(A). The government acknowledges that Sergeant Eckenrode died in the line of duty as a result of what the government also acknowledges was an injury incurred in the performance of duty. The critical interpretive issue that remains to be decided is the type and degree of causation required between the two. The Board appears to have

adopted an extremely narrow interpretation of the statutory term "sole and direct cause" in denying Sergeant Eckenrode's survivor's claim because his death was a "complication" of that injury. The Board relied only on a dictionary definition but offered no analysis of the text in statutory context, did not review the legislative history and weigh the humanitarian purpose of the statute, nor did it consider the possibility of absurd results. I would remand for the Board to conduct a proper analysis and fully explain its interpretation. *See D.C. Dep't of Corr. v. D.C. Dep't of Emp. Servs.*, 281 A.3d 588, 592 (D.C. 2022) (to be considered reasonable, agency's interpretation "must reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support, and the record must provide evidence that the agency considered the language, structure, or purpose of the statute when selecting an interpretation." (citation modified)).[3]

---

[3] A separate question is the degree of deference the court would owe to such an interpretation in light of recent legislation, *see* D.C. Code § 2-510(c), and the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).